UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TNT CRANE & RIGGING INC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-265 |
| | § | |
| JOHN ATKINSON, *et al*, | § | |
| | § | |
| Defendants. | § | |

# ORDER

Before the Court are Defendants' nearly identical motions for summary judgment (D.E. 23, 26), challenging Plaintiff's claims to the extent that they rely on the enforceability of non-compete agreements between Plaintiff TNT Crane & Rigging, Inc. (TNT) and Defendant John Atkinson (Atkinson). TNT responds that the motions are improper because they are not specific in challenging any particular legal theory and because Defendant Allegiance Crane & Equipment, LLC (Allegiance) does not have standing to challenge contracts to which it was not a party. TNT further responds that the non-compete agreements are fully enforceable. For the reasons set out below, the motions are DENIED.

## BACKGROUND

TNT employed Atkinson as a crane operator in February 2006. In March 2012, TNT promoted Atkinson to a position as Sales Representative. In December 2013, as part of his promotion and pursuant to a Long-Term Incentive Plan, TNT agreed to provide Atkinson with equity interests in the TNT partnership that would vest over a

period of years so long as Atkinson remained employed and complied with certain restrictive covenants. Among the covenants were non-compete, non-solicitation of TNT employees, and confidentiality agreements. As a Sales Representative, Atkinson was provided with access to a wealth of TNT's confidential information.

On May 23, 2014, Atkinson left his job with TNT and immediately went to work for Defendant Allegiance, a direct competitor of TNT. On June 24, 2014, TNT filed its Complaint, alleging that, even before he left TNT, Atkinson had violated the non-compete, non-solicitation, and confidentiality agreements using TNT proprietary information to negotiate an agreement on behalf of Allegiance with one of TNT's biggest customers. TNT alleges that, both during and after his time with TNT, Atkinson had forwarded to his personal email account extensive information about TNT's customers, pricing, and inventory, all of which was subject to the confidentiality agreement. Atkinson further allegedly solicited TNT employees to join him in working for Allegiance. Included in the allegations is the claim that Allegiance knowingly assisted Atkinson in breaching his agreements with TNT in anticipation of hiring Atkinson and raiding TNT's customer base and employees.

TNT has alleged the following causes of action:

- Against Atkinson, only:
    - breach of the duty of loyalty;
    - breach of contract (non-compete, non-solicitation, confidentiality);
    - breach of confidential relationship/fiduciary duty;
    - violation of the Texas Theft Liability Act; and
    - fraud.

- Against Allegiance, only:
    - knowing participation in breach of fiduciary duty; and
    - tortious interference with an existing contract.
- Against both Atkinson and Allegiance:
    - violations of the Computer Fraud and Abuse Act; and
    - tortious interference with prospective business relations.

TNT seeks compensatory damages as well as exemplary damages for knowing conduct, along with attorney's fees. TNT sought injunctive relief and the parties entered into an agreed order in that regard.

## DISCUSSION

### A. Relevance of Contract, Standing, and Waiver

#### 1. The Issue of an Enforceable Contract is Relevant to TNT's Claims.

TNT asserts that Atkinson's and Allegiance's respective motions for summary judgment are fatally vague because they challenge the enforceability of the non-compete agreement without further articulating how that determination may translate to any judgment against TNT on any particular claim. According to Fed. R. Civ. P. 56, "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Whether a non-compete agreement is enforceable or an unreasonable restraint on trade is a question of law for the Court. *Light v. Centel Cellular Company of Texas*, 883 S.W.2d 642, 644 (Tex. 1994). As such, summary judgment is a proper procedure to challenge the enforceability of the non-compete agreement as "part of a claim."

The enforceability of the non-compete agreement is clearly part of TNT's claim against Atkinson for breach of contract regarding any work he did for competitor Allegiance during and immediately after his employment with TNT. *E.g., B&W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (an existing, enforceable contract is a necessary element in a breach of contract claim). Therefore, there is no question that Atkinson's request for summary judgment on the issue is presented for a clear and proper purpose in this case—to defeat the claim for breach of contract.

The existence of the non-compete agreement is also central to TNT's claim against Allegiance for tortious interference with a contract.

> In Texas, the elements of a cause of action for tortious interference with contractual relations are (1) there was a contract subject to interference, (2) the act of interference was willful and intentional, (3) such intentional act was a proximate cause of plaintiff's damage, and (4) actual damage or loss occurred.

*Juliette Fowler Homes, Inc. v. Welsh Associates, Inc.*, 793 S.W.2d 660, 664 (Tex. 1990). However, that contract need not be enforceable between the contracting parties to be subject to tortious interference. *Id*. (citing *Clements v. Withers*, 437 S.W.2d 818, 821 (Tex. 1969)). The claim for tortious interference is eliminated only if the contract is considered "void." *Id*.

A covenant not to compete that is found to be an unreasonable restraint of trade and unenforceable on grounds of public policy, as expressed in Tex. Bus. & Comm. Code § 15.50 and as claimed by Allegiance, is void. *Kadco Contract Design Corp. v. Kelly*

*Services, Inc.*, 38 F. Supp. 2d 489, 496 (S.D. Tex. 1998) (applying Texas law). Thus, if the non-compete agreement is void, it cannot form the basis of an action for tortious interference. *Juliette Fowler, supra* at 665 (citing *NCH Corp. v. Share Corp.*, 757 F.2d 1540, 1543–44 (5th Cir. 1985); *Hi–Line Elec. Co. v. Dowco Elec. Prod.*, 765 F.2d 1359, 1362 (5th Cir. 1985)).

Because the issue of whether the non-compete agreement is void under § 15.50 may determine whether TNT has a cause of action against Allegiance for tortious interference with an existing contract, it is a proper issue for summary judgment and Allegiance has standing to raise it. *See Monsanto Co. v. Geertson Seed Farms*, 130 S.Ct. 2743, 2752 (2010) (standing requires an injury in fact, "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.").

### 2. Defendants Did Not Fail to Plead that Contracts Were Unenforceable.

TNT argues that, even if both Allegiance and Atkinson had standing to raise their challenges to the Grant Agreements and properly did so in their respective summary judgment motions, their requests for relief must be denied because their challenge is an affirmative defense that they did not plead, thus waiving it. D.E. 27, p. 9; D.E. 29, p. 7. When a federal court sits in diversity jurisdiction, state law defines the nature of defenses, but the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised and when waiver occurs. *Morgan Guaranty Trust Co. of New York v. Blum*, 649 F.2d 342, 344 (5th Cir. 1981).

All affirmative defenses must be pled in the answer or in an amended answer permitted under Fed.R.Civ.P. 15(a), or be deemed waived. *Blum, supra* at 345. *See also*, Fed. R. Civ. P. 8(b), (c). However, there is no requirement that an affirmative defense be set forth in a particular way or contain "magic words" in order to be cognizable. *Starcraft Co. v. C.J. Heck Co. of Texas*, 748 F.2d 982, 990 n.11 (5th Cir. 1984) (citing C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1274). Rather, "Pleadings must be construed so as to do justice." Rule 8(e). The Court, therefore, reviews the entirety of the respective answers to determine whether this challenge to the non-compete agreements was pled.

### a. Atkinson's Defense Against Breach of Contract Claim

Under Texas law, whether a contract is void or unenforceable in response to a breach of contract claim is an affirmative defense that must be pled. *950 Corbindale, L.P. v. Kotts Capital Holdings Ltd. P'ship*, 316 S.W.3d 191, 196 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *Parks v. Developers Surety & Indemnity Co.*, 302 S.W.3d 920, 923-24 (Tex. App.—Dallas 2010, no pet.). Atkinson denied that the Grant Agreements contained a non-compete provision and that they were supported by consideration because the equity interests had no value and could be defeated before they vested. D.E. 14, ¶ 9. In responding to TNT's breach of contract count, he further denied that the non-compete agreements were "ancillary to an otherwise enforceable agreement as required by the Texas Covenants Not to Compete Act." *Id.*, ¶ 66.

These affirmative defenses, while stated in Atkinson's answer, were not listed in the section entitled "Statement of Defenses," which contains a number of affirmative

defenses.  *Id*., pp. 16-17.  Nonetheless, construing the pleading so as to do justice, it is clear that the specific issues asserted here were raised in Atkinson's answer so that there can be no prejudice to TNT in addressing them on their merits.  The Court holds that Atkinson did not waive the question whether the non-compete agreement was supported by consideration or was ancillary to an otherwise enforceable agreement.

### b.  Allegiance's Defense to Tortious Interference Claim

TNT cites *Juliette Fowler* as supporting its contention that "public policy" that voids a contract is an affirmative defense that must be pled.  D.E. 27, p. 9.  Like Atkinson, Allegiance pled in response to TNT's pleadings, denying that the non-compete agreements were supported by valid consideration or were ancillary to an otherwise enforceable agreement as required by the Texas Covenants Not to Compete Act.  D.E. 12, ¶ 66.  Also like Atkinson, Allegiance did not include this matter as an affirmative defense in the section entitled "Statement of Defenses," in which affirmative defenses were set out.  *Id.*, pp. 16-17.  As reasoned above, this does not prevent the Court from finding that the matter was sufficiently raised to avoid a waiver.

With respect to Allegiance, however, the parties go a half-step further.  They debate whether the non-compete agreement must be void by "public policy" and whether "public policy" was asserted in Allegiance's answer.  Assuming without deciding that the pleading requirement is that the non-compete agreement was void as against "public policy," the Court holds that, construing pleadings so as to do justice, Allegiance's reference to a Texas statute was sufficient because Texas statutes generally express public policy and it is the public policy behind the statute that potentially voids the non-

compete agreements. *See Texas Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 249-50 (Tex. 2002). Again, the Court holds that Allegiance's answer is sufficient to raise the issues that the non-compete agreements were not supported by consideration and were not ancillary to an otherwise enforceable contract and thus void as being in violation of public policy. There was no waiver.

### B. Whether the Non-Compete Agreements are Void.

Procedural obstacles aside, the Court considers whether the non-compete agreements comply with the governing statute, which reads:

> a covenant not to compete is enforceable if it is ***ancillary to or part of an otherwise enforceable agreement*** at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Tex. Bus. & Comm. Code § 15.50(a) (emphasis added). Atkinson and Allegiance do not challenge the reasonableness of the covenants' limitations on time, geographic area, or scope of activity. Instead, they focus on whether the covenants were part of, or ancillary to, an otherwise enforceable agreement. More specifically, the question is whether the consideration offered to Atkinson is illusory and thus insufficient to support the non-compete agreements or other covenants binding Atkinson.

At issue are two agreements, entitled Management Interest Grant Agreement (Management Grant Agreement, D.E. 23-1, pp. 2-21) and Operators Management Interest Grant Agreement (Operators Grant Agreement, D.E. 23-1, pp. 22-42) (jointly Grant Agreements), which were executed simultaneously. As contained in these agreements,

the main promise that TNT made to Atkinson was the granting of partnership equity interests, which would vest over time.

Atkinson and Allegiance contend that this promise was illusory because neither of the Grant Agreements actually required TNT to vest Atkinson's equity interests and, even if vested, were subject to defeasance. They also contend that, because rights were dependent upon the general partner's discretion or because the Grant Agreements could be amended, all promises were illusory. If TNT's grant of equity interests is illusory, they argue, then the contract fails for want of consideration.

TNT disputes each of these arguments. However, none of those arguments is necessary to the decision in this case. TNT need not prove that the grant of equity interests is sufficient to support the non-compete covenant because there is sufficient consideration supplied by the confidentiality agreement to satisfy the requirements of § 15.50(a).

1. Discussion

The Supreme Court of Texas has addressed the enforceability of non-compete agreements in at-will contracts in significant depth through three landmark cases: *Light v. Centel Cellular Company of Texas*, 883 S.W.2d 642, 644 (Tex. 1994); *Alex Sheshunoff Management Services, L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006); and *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844 (Tex. 2009). In relevant part, under Texas law, a non-compete agreement challenged under § 15.50(a) in an at-will context will survive where (a) a related confidentiality agreement is enforceable or (b) an otherwise illusory promise is made real by performance.

Parts of the Grant Agreements include confidentiality provisions. D.E. 23-1, pp. 9-10, 30-31. Pursuant to those agreements, Atkinson promised to maintain in confidence all confidential, proprietary, or trade secret information that TNT supplied and to return to TNT all documents falling within the provision's definition upon termination of his employment. Under the *Light* trilogy, this created an implied promise that TNT would supply Atkinson with confidential information. According to the uncontroverted summary judgment evidence, TNT actually provided such confidential information to Atkinson, as it was necessary to Atkinson's performance of his duties as a Sales Representative. D.E. 27-1, pp. 3-4; D.E. 27-2, p. 3; D.E. 29-1, pp. 3-4; D.E. 29-2, p. 3.

Therefore, TNT's executory, prospective, or implied promise to supply Atkinson with confidential information and Atkinson's unilateral or express promise to maintain that confidentiality became an enforceable agreement—at the latest—when TNT actually supplied the information. *Mann Frankfort, supra* at 848-50. Like the agreements in *Mann Frankfort* and *Sheshunoff*, the confidentiality agreement, on its face, was sufficiently related to the purposes of the non-compete agreement that it satisfied the requirement of § 15.50(a) of being an ancillary enforceable agreement. *Mann Frankfort, supra* at 849-50 (citing *Light, supra* at 655); *Sheshunoff, supra* at 651.

Allegiance seeks to distinguish this case from *Mann Frankfort* and *Sheshunoff* on the basis that those cases involved standard employment agreements rather than agreements to grant equity interests in the company. D.E. 28, pp. 4-6. Instead, it advances *Olander v. Compass Bank*, 363 F.3d 560, 566 (5th Cir. 2004) as controlling authority. While *Olander* involved the employer's grant of stock options, that fact does

10 / 12

not take it out of the scope of *Mann Frankfort* and *Sheshunoff*.

Following *Light*, but writing before *Mann Frankfort* and *Sheshunoff,* the Fifth Circuit in *Olander* refused to consider the confidentiality provision as an ancillary enforceable contract that supported the non-compete agreement for purposes of § 15.50(a). That decision did not reject the possibility that a confidentiality agreement could be sufficient to support the non-compete covenant. In that regard, it was entirely consistent with the Texas cases in considering whether the confidentiality agreement was enforceable. Instead, the decision was expressly based on the finding that there was no evidence that the employer had ever supplied the employee with confidential information. Thus, under the facts of that case, the confidentiality provision had never become enforceable and was thus irrelevant to the § 15.50(a) analysis.

So the *Olander* court was forced to consider whether the agreement to provide stock options, by itself, was an enforceable agreement that would support a non-compete agreement. Again, under the facts of that case, the terms that required forfeiture of the stock options were such that the Fifth Circuit concluded that the multiple grants of stock options were illusory and would not constitute contractual consideration to validate the non-compete agreement. The law considered in *Olander* is entirely consistent with *Light*, *Mann Frankfort*, and *Sheshunoff*. Only the facts distinguish it.

## 2. Conclusion

The Court concludes that, pursuant to the evidence in this case, TNT accepted Atkinson's unilateral promise to maintain the confidentiality of TNT's confidential, proprietary, and trade secret information by providing that information to Atkinson, who

used it in performing his obligations as TNT's employee. The confidentiality provision thus became an enforceable contract. Its purpose was aligned with the purpose of the non-compete agreement and thus, under § 15.50(a) and the *Light* trilogy, was an ancillary enforceable agreement that prevents the non-compete agreement from being void.

Because the confidentiality agreement is sufficient, the Court does not reach Atkinson's and Allegiance's challenge to the enforceability of TNT's promise to grant Atkinson equity interests. The Court **DENIES** Defendant Allegiance Crane & Equipment, LLC's Motion for Partial Summary Judgment (D.E. 23) and the Court **DENIES** Defendant John Atkinson's Motion for Partial Summary Judgment (D.E. 26).

ORDERED this 16th day of January, 2015.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE